1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
11

| | |
|---|---|
| 12  P. ORB HATTON, an individual, and DIANE HATTON, an individual, | **Case No.:  1:15-cv-00187-GSA** |
| 13              Plaintiffs, | **ORDER RE: DEFENDANT BANK OF** |
| 14      v. | **AMERICA, N.A. AND BSI FINANCIAL SERVICES' MOTIONS TO DISMISS** |
| 15 | |
| 16  BANK OF AMERICA, N.A., a national association; BSI FINANCIAL SERVICES, a | **(ECF Nos. 5, 16)** |
| 17  business entity; and Does 1 through 100, inclusive, | |
| 18              Defendants. | |
| 19 | |

20          Plaintiffs P. Orb Hatton and Diane Hatton ("Plaintiffs") brought this action against

21   defendants Bank of America, N.A. ("BofA") and BSI Financial Services ("BSI") (collectively,

22   "Defendants") following the attempted foreclosure of their property. Defendants have separately

23   moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). The

24   Court has reviewed the papers and determined that this matter is suitable for decision without oral

25   argument pursuant to Local Rule 230(g). After a review of the pleadings and for the reasons set

26   forth below, the Court determines that the Motions to Dismiss will be GRANTED in part and

27   DENIED in part.

28

# I.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This case arises out of the attempted foreclosure of property located in Mariposa County. According to Plaintiffs' Complaint, Plaintiffs refinanced a piece of property located at 10265 Granite Dell Road in Coulterville, California with Countrywide Financial in March 2008. Plaintiffs secured the $416,925 loan by executing a Deed of Trust and Promissory Note with Countrywide Financial. In July 2008, the loan was transferred to BofA.

By October 2011, Plaintiffs anticipated a loss of income as the result of illness and a business shut down. Fearing a default in the terms of their loan, they contacted BofA to inquire about the possibility of a loan modification. They also contemplated obtaining another loan to pay off the amount owed to BofA. BofA informed Plaintiffs that they were eligible for a loan modification, but would need to submit additional documents to qualify. BofA also informed Plaintiffs that any loan payments they missed while they were awaiting the modification would be forgiven. Plaintiffs submitted the requested documents, but continued to make regular payments. In September 2012, Jason Taylor, an employee of BofA, reiterated this promise to Plaintiffs.

In March 2013, Plaintiffs obtained approval from a lender called Proficia for a reverse mortgage loan of $411,000 that Plaintiffs intended to use to pay off the BofA loan. Proficia's loan was offered with the caveat that it would need to be accepted by July 1, 2013. Plaintiffs then contacted BofA to obtain a quote for the amount to be paid off on their loan. BofA, through its employee Garrett Johnson, Jr., informed them that he could only obtain the quote if they forwarded the Proficia loan approval letter to him. Plaintiffs did so, but were unable to reach Johnson thereafter, despite multiple attempts, until May 2013. Johnson acknowledged Plaintiffs' July 1, 2013 deadline and promised to provide the requested quote forthwith.

Plaintiffs attempted to contact Johnson several times thereafter, but he never provided the requested quote. Plaintiffs did not meet the July 1, 2013 deadline.

Plaintiffs then contacted Proficia to obtain an extension on the loan offer. Proficia told them, however, that they would now only be able to offer Plaintiffs a loan in the amount of $395,000 and that the offer would need to be accepted by October 1, 2013.

In August 2013, Plaintiffs contacted Johnson, who apologized for failing to return their calls. After Plaintiffs explained Proficia's new offer, Johnson informed them that he could obtain a modification for Plaintiffs to bring the BofA loan's principal balance down to an amount closer to $395,000. He also told them that this could be accomplished before October 1, 2013. Plaintiffs submitted their loan modification application.

In September 2013, Johnson asked Plaintiffs to resubmit some documents, but told them that they would have a final determination within two days. Four days later, Plaintiffs contacted Johnson, but discovered that their case had been reassigned to Brittany Hunt, a different BofA employee. Hunt told Plaintiffs that, contrary to anything they had been told, they would not be eligible for any loan forgiveness. Plaintiffs asked to speak to a supervisor and were told that they would be contacted by an employee named John Hamlet in short order. Hamlet never contacted Plaintiffs.

Plaintiffs' case was then transferred to an individual named Felecia, but they were unable to reach her. Plaintiffs missed their October 1, 2013 deadline, but Proficia offered to extend the deadline until December 31, 2013. Despite several attempts to contact BofA, Plaintiffs missed this deadline, as well. Proficia then informed Plaintiffs that they were no longer willing to consider Plaintiffs for a reverse mortgage.

In 2014, Plaintiffs sought to obtain a reverse mortgage loan from Carrollton Mortgage of Modesto. Carrollton approved a loan in the amount of $339,000. This time, Plaintiffs attempted to speak with the Vice President of BofA's Modesto branch office, Carlyn. Plaintiffs were informed throughout 2014 that the situation would be resolved. On August 28, 2014, however, a Notice of Default was recorded against Plaintiffs' property. In November 2014, Carlyn informed Plaintiffs that the loan had been sold. BSI then contacted Plaintiffs to inform them that they would now be servicing Plaintiffs' loan.

Plaintiffs then spoke with Chris Davis at BSI, who told Plaintiffs that he could solve their problems. He informed them that if they provided their financial information to him over the phone and submitted an approval letter for the reverse mortgage for his review, he would obtain a loan modification so that they could accept the Carrollton reverse mortgage offer. Plaintiffs did

so, but were never able to contact Davis again. A Notice of Trustee's Sale was recorded against the property on January 15, 2015.

## II.        REQUEST FOR JUDICIAL NOTICE

BSI requests the Court take judicial notice of the following documents maintained in the Official Records of Mariposa County: Deed of Trust, recorded April 1, 2008; Assignment of Deed of trust, recorded December 31, 2012; Substitution of Trustee, recorded August 28, 2014; Notice of Default and Election to Sell under Deed of Trust, recorded August 28, 2014; and Notice of Trustee's Sale, dated January 15, 2015. Similarly, BofA requests that the Court take judicial notice of the following documents: Deed of Trust, dated March 24, 2008 (and recorded April 1, 2008); Assignment of Deed of Trust, recorded March 2, 2012; and Notice of Default and Election to Sell Under Deed of Trust, recorded on August 28, 2014.[1]

Courts may take judicial notice of facts "not subject to reasonable dispute" when they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Plaintiffs do not oppose the request for judicial notice. All the documents attached by Defendant are public records and the Court takes judicial notice of them.[2] *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (courts may "take judicial notice of 'matters of public record'" and consider them when ruling on a Rule 12(b)(6) motion).

## III.       DISCUSSION

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept all factual

---

[1] The Deed of Trust and Notice of Default and Election to Sell Under Deed of Trust appear in both Defendants' requests for judicial notice.
[2] Defendants should note, however, that some of the exhibits attached to their Requests for Judicial Notice are barely legible. Should the parties ask the Court to review documents in the future, they are advised to attach higher quality copies or images.

4

1    allegations in the complaint as true and construe the pleadings in the light most favorable to the

2    nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th

3    Cir. 2007). Legally conclusory statements, when unsupported by actual factual allegations, need

4    not be accepted. *Ashcroft*, 556 U.S. at 678-79. A court may, however, consider documents other

5    than the complaint when they are judicially noticeable under Federal Rule of Evidence 201 or

6    where "no party questions their authenticity and the complaint relies on those documents." *Harris*

7    *v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

8    **A. Breach of the Implied Covenant of Good Faith and Fair Dealing (First Cause of**
     **Action)**

9

10   Plaintiffs' First Cause of Action, alleging a breach of the implied covenant of good faith

11   and fair dealing, is targeted only at conduct by Defendant BofA.

12   "There is an implied covenant of good faith and fair dealing in every contract that neither

13   party will do anything which will injure the right of the other to receive the benefits of the

14   agreement." *Khan v. CitiMortgage, Inc.*, 975 F.Supp.2d 1127, 1142 (E.D. Cal. 2013), *quoting*

15   *Kransco v. Am. Emp. Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400 (2000). To allege an implied

16   covenant claim, a plaintiff "[m]ust show that the conduct of the defendant, whether or not it also

17   constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge

18   contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but

19   rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes

20   and disappoints the reasonable expectations of the other party thereby depriving that party of the

21   benefits of the agreement." *Croshal v. Aurora Bank, F.S.B.*, No. C 13-05435 SBA, 2014 WL

22   2796529, at *6 (N.D. Cal. June 19, 2014), *quoting Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,

23   222 Cal.App.3d 1371, 1395 (1990). Put more simply, "[t]he covenant . . . requires each party to

24   do everything the contract presupposes the party will do to accomplish the agreement's

25   purposes." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 524 (2013).

26   ///

27   ///

28   ///

In the Complaint, Plaintiffs allege that BofA breached the implied covenant in the Deed of Trust when it interfered with their ability to make payments towards the mortgage by:

1. Inducing Plaintiffs to apply for a "loan modification instead of making mortgage payments" (Complaint ¶ 31, ECF No. 1);

2. Refusing to provide a payoff quote to Plaintiffs when requested so that Plaintiffs could pay off the loan using a reverse mortgage offer (Complaint ¶ 34, ECF No. 1)

Defendant BofA first argues that the Deed of Trust only requires Plaintiffs to make mortgage payments in a timely fashion and lacks any express reference to prepayment of the loan balance. Because the implied covenant of good faith cannot extend beyond the express terms of the contract, BofA argues, BofA's failure to take action to facilitate Plaintiffs' ability to prepay the entire loan balance cannot constitute a breach of that covenant.

Second, BofA argues that Plaintiffs' failure to make mortgage payments was not the result of any actions taken by BofA. Rather, as Plaintiffs acknowledge in the Complaint, the failure to make scheduled mortgage payments was the result of the Plaintiffs' own financial circumstances.

Third, BofA asserts that even given Plaintiffs' allegations in the Complaint, BofA did not take any affirmative steps to prevent Plaintiffs from fulfilling their obligations under the Deed of Trust. BofA points out, for instance, that Plaintiffs could choose to make mortgage payments at any point in time, even up to the present time. To support this contention, BofA points to Covenant 19 of the Deed of Trust, which provides Plaintiffs the right to reinstate the terms of the loan prior to sale of the property.

In relevant part, the Deed of Trust provides that: "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and ***any prepayment charges and late charges*** due under the Note." (BofA Request for Judicial Notice 4, Exh. A, ECF No. 17) (emphasis added). Contrary to BofA's first argument, the Deed of Trust thus appears to anticipate the possible prepayment of amounts due, even if it does not require them. If, as Plaintiffs allege, BofA refused to provide an accounting of charges due when Plaintiffs attempted to make a prepayment of the loan, BofA could plausibly be said to have frustrated Plaintiffs' ability to make those prepayments. The same could be said of the alleged attempts by BofA to induce Plaintiffs not to make mortgage payments when they were due. *Rothman v. U.S. Bank Nat'l Ass'n*, No. C

6

13-3381 MMC, 2014 WL 1648619, at *6 (N.D. Cal. April 24, 2014) (plaintiff plausibly stated implied covenant claim when defendant failed to provide accounting of amounts due under deed).

Similarly, BofA's argument that they did not take any action to prevent Plaintiffs from reinstating the loan is unpersuasive. As Plaintiffs point out, the implied covenant claim, as alleged, does not arise out of a denial of their right to reinstate the loan. Rather, it is a result of BofA's alleged attempts to frustrate Plaintiffs' ability to make payments under the loan. Even a lack of action, rather than an affirmative action, can constitute a breach of the implied covenant. *Jenkins*, 216 Cal.App.4th at 524. The Deed of Trust includes express terms requiring Plaintiffs to pay any prepayment or late charges. It stands to reason, then, that the Deed of Trust presupposes that BofA will tell Plaintiffs what those charges are when asked. In this instance, Plaintiffs did so in an attempt to make a payment that would include those charges by making a payment of the loan in full, but BofA, through its inaction, declined to provide a quote.

Finally, BofA's argument that it did not induce Plaintiffs to miss payments misstates the allegations in the Complaint. While it is true that the Complaint alleges Plaintiffs first sought a loan modification as a result of a "shortfall in income," it goes on to allege that Plaintiffs chose not to make later payments "based solely on Defendant's insistence that payments were not required during the course of applying for a modification." (Complaint ¶¶ 11, 32, ECF No. 1.) Even if the *initial* missed payment was not related to any statements by BofA, the Complaint alleges that *later* missed payments were.

Evaluating the Complaint's allegations in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded a claim for a breach of the implied covenant of good faith and fair dealing. Defendant BofA's Motion to Dismiss as against the First Cause of Action is DENIED.

**B.  Violation of California Civil Code Section 2923.7 (Second Cause of Action)**

California Civil Code section 2923.7 requires that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." A "single point of contact" ("SPOC") "must have authority to stop foreclosure proceedings." *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195-MWF

(AJWx), 2014 WL 4798890, at *6 (C.D. Cal. Sept. 26, 2014). The SPOC must also, among other things, be able to "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." Cal. Civ. Code § 2923.7(b)(3).

### 1. Bank of America

In their opposition to BofA's Motion to Dismiss, Plaintiffs state that they would like to "withdraw their Cal. Civ. Code § 2923.7 claim as it pertains to Defendant BANK OF AMERICA without prejudice." (Opposition to BofA Motion to Dismiss 10 fn. 1, ECF No 25) (emphasis in original). The Second Cause of Action as against BofA is thus DISMISSED WITHOUT PREJUDICE.

### 2. BSI Financial Services

With respect to BSI, the Complaint alleges that "BSI violated this statute when it purported to assign Chris Davis as Plaintiffs' single point of contact in December 2014. Specifically, Mr. Davis told Plaintiffs that after they verbally gave him their financial information and sent over the reverse mortgage approval letter, Mr. Davis would respond to Plaintiffs within three days. However, Mr. Davis has yet to respond and, instead, BSI initiated foreclosure proceedings against Plaintiffs. Thus, Mr. Davis also did not ensure that Plaintiffs were considered for all foreclosure prevention alternatives." (Complaint ¶ 40, ECF No. 1.)

BSI argues that these allegations are inadequate because: (1) Plaintiffs never allege that they requested the assignment of an SPOC, so the requirements of § 2923.7 were never triggered; (2) BSI was not the one who initiated foreclosure proceedings against Plaintiffs; and, (3) Plaintiffs did not submit a complete application for a loan modification to BSI, precluding the application of this statute.

No language in the statute requires a plaintiff to submit a complete loan application *before* an SPOC is assigned. Indeed, as Plaintiffs point out, such a rule would put the cart before horse: a borrower would be unable to submit a complete application for a loan modification until *after* they had spoken with the mortgage servicer to ask about foreclosure alternatives (such as loan modification). Thus, (3) does not constitute grounds for dismissal.

Similarly, (2) is inapposite, given the requirements of the statute. **First**, § 2923.7(b) requires that the SPOC ensure, among other things, "that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any" and that the SPOC have "access to individuals with the ability and authority to stop foreclosure proceedings when necessary." Plaintiffs merely need allege that BSI did not meet the requirements of the statute. **Second**, the fact that BSI was not listed on the Notice of Trustee's Sale does not mean that it was not responsible for initiating foreclosure proceedings against Plaintiffs. The precise extent of BSI's involvement need not be ascertainable at this stage of the litigation—what matters are the allegations as framed in the Complaint.

BSI's first argument, however, comports with a strict reading of the statutory language. Courts have read § 2923.7 to "require a borrower to request a SPOC before the servicer is required to establish one." *Carbajal v. Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG (PLAx), 2015 WL 2454054, at *7 (C.D. Cal. April 10, 2015). While the Complaint contains an oblique reference to Plaintiffs' efforts to reach someone at BSI, the allegations stop short of asserting that Plaintiffs requested a single point of contact. (Complaint ¶ 26, ECF No. 1 ("Plaintiffs began the process of trying to contact someone at BSI to find out what his options were. Plaintiffs were finally able to reach an individual named Chris Davis").) Plaintiffs may be able to correct this deficit through amendment, however, by clarifying the "process" they went through to contact Davis. This cause of action is thus DISMISSED WITHOUT PREJUDICE.

**C.  Violation of California Civil Code Section 2923.6 (Third Cause of Action)**

Plaintiffs' Third Cause of Action under § 2923.6 is only targeted at conduct by Defendant BSI. In particular, § 2923.6 states that "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c). Plaintiffs allege that BSI violated this statute by causing a Notice of Trustee's Sale to be recorded "despite the fact that Plaintiff had submitted

1    a complete loan modification application to BSI . . . and had yet to receive a response of [sic] the

2    application." (Complaint ¶ 48, ECF No. 1.)

3         BSI argues that this claim should be dismissed because: (1) BSI was not the party that

4    recorded the Notice of Trustee's Sale; and (2) Plaintiffs never submitted a complete application,

5    so the statute was never triggered. As explained above, however, BSI's degree of involvement in

6    the foreclosure is not at issue in the current Motions—the Court's analysis on a 12(b)(6) motion

7    "must construe the pleading in the light most favorable to the party opposing the motion, and

8    resolve factual disputes in the pleader's favor." *Kelley v. Corrections Corp. of America*, 750

9    F.Supp.2d 1132, 1137 (E.D. Cal. 2010), *citing Hosp. Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738,

10   740 (1976). Nor do the terms of the statute require BSI to be the party recording the Notice of

11   Trustee's Sale for a violation to occur. Rather, the statute prohibits "a mortgage servicer,

12   mortgagee, trustee, beneficiary, or authorized agent" from recording a "notice of default or notice

13   of sale" while a "first lien loan modification application is pending." Cal. Civ. Code § 2923.6.

14   The prohibition on recording a notice thus extends beyond just the mortgage servicer and includes

15   agents acting on behalf of that servicer. Thus, the mere fact that BSI was not the party listed on

16   the Notice of Trustee's Sale need not bar the cause of action from proceeding.

17        Plaintiffs have also adequately alleged that a "complete application" under the terms of

18   the statute was submitted to BSI. Under the Civil Code, an application is "complete" if a

19   borrower "has supplied the mortgage servicer with all documents required by the mortgage

20   servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code §

21   2923.6(h). Construing Plaintiffs' allegations favorably, the Complaint alleges that Davis, BSI's

22   employee, told Plaintiffs that if they: (1) gave him their financial information over the phone; and

23   (2) sent him an approval letter for their reverse mortgage offer, "their application would be

24   complete." (Complaint ¶ 26, ECF No. 1.) Plaintiffs further allege that they met these two

25   conditions. *Id.* They have thus plausibly alleged that they supplied BSI with the documents

26   required by BSI and that a complete application was submitted.

27        BSI argues that it is "absurd" for Plaintiffs to believe that merely providing information

28   over the phone and submitting an approval letter to BSI completed their loan application, given

                                        10

1   their prior attempts over the span of two years to complete an application with BofA. But it was

2   BSI's employee who told Plaintiffs that they merely needed to provide information telephonically

3   and follow up with a copy of their approval letter. It would contravene both the terms of the

4   statute and common sense to require Plaintiffs to disregard statements by BSI about the

5   documents required to complete an application with BSI. In any case, Plaintiffs have plausibly

6   alleged that they submitted a complete application for a loan modification to BSI and that, while

7   the application was pending, BSI caused a Notice of Trustee's Sale to be recorded on the

8   property. As to the third cause of action, BSI's Motion to Dismiss is DENIED.

9            **D.  Fraud and Negligent Misrepresentation (Fourth and Fifth Causes of Action)**

10           Plaintiffs' fourth cause of action alleges fraud on the part of both Defendants. Plaintiffs'

11  fifth cause of action alleges negligent misrepresentation on the part of both Defendants. Both

12  causes of action are premised on statements various employees of the Defendants made to

13  Plaintiffs in the loan modification process.

14           To allege a claim for fraud, "a plaintiff must allege: (i) a false misrepresentation of

15  material fact; (ii) the defendant's knowledge of its falsity; (iii) intent to defraud; (iv) justifiable

16  reliance; (v) resulting in damage." *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195-MWF

17  (AJWx), 2014 WL 4798890, at *14 (C.D. Cal. Sept. 26, 2014), *citing Lazar v. Superior Court*, 12

18  Cal.4th 631, 638 (1996). Because Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead

19  fraud claims with particularity, plaintiffs must also include "the who, what, when, where, and

20  how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.

21  2010).

22           The elements of negligent misrepresentation are the same as those for intentional

23  misrepresentation, "except that it does not require knowledge of falsity, but instead requires a

24  misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."

25  *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 231 (2013). In addition, "negligent

26  misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or

27  otherwise, owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal.App.3d 858, 864

28  (1988). And, "as a general rule, a financial institution owes no duty of care to a borrower when

the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991).

### 1. *Bank of America*

Plaintiffs allege fraud and negligent misrepresentation arising out of two separate interactions with BofA:

- In or around April 2013, Garrett Johnson, Jr., a BofA employee, told Plaintiffs that "he was the only individual that could give Plaintiffs a pay-off quote and he could obtain the quote once Plaintiffs sent in the reverse mortgage letter." (Complaint ¶ 15, ECF No. 1.) He later informed Plaintiffs that he could provide them "with a payoff quote prior to July 1, 2013." (Complaint ¶ 52, ECF No. 1.) Plaintiffs allege that these representations were fraudulent because Johnson lacked the authority and the ability to obtain a payoff quote within the specified timeframe. Plaintiffs then lost the ability to accept the reverse mortgage while they were waiting on Johnson to act. *Id.*

- In August 2013, Johnson again spoke with Plaintiffs and told them that he "could obtain a modification for Plaintiffs which would bring Plaintiffs [sic] principal balance down" and that he "could get this done prior to October 1, 2013." (Complaint ¶ 18, ECF No. 1.) Plaintiffs again allege that these representations were fraudulent because Johnson lacked the authority and the ability to obtain a payoff quote and that they relied on his statements while a reverse mortgage offer expired. (Complaint ¶ 53, ECF No. 1.)

Plaintiffs conclude each cause of action by listing the various other damages they have suffered as a result of Defendants' actions.

### a. *Negligent misrepresentation: Legal duty.*

BofA argues that, as an initial matter, a claim for negligent misrepresentation requires a showing that BofA had a legal duty towards the Plaintiffs. (BofA Motion to Dismiss 7:6-10, ECF No. 16, *citing Eddy v. Sharp*, 199 Cal.App.3d 858, 864 (1988).) Because "loan modification activities are within a bank's conventional role as a mere lender of money," any actions taken in the loan modification process "do not give rise to any duty." *Id.* at 7:14-17.

California Courts of Appeal are split on whether a legal duty arises out of a bank's role in the loan modification process. *Compare Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.App.4th 49, 67 (2013) ("We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of

money"), *with Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 949 (2014)

("The borrower's lack of bargaining power coupled with conflicts of interest that exist in the

modern loan servicing industry provide a moral imperative that those with the controlling hand be

required to exercise reasonable care in their dealings with borrowers seeking a loan

modification"). Federal district courts examining this split have also reached different

conclusions. *Compare Carbajal v. Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG (PLAx), 2015

WL 2454054, at 6 (C.D. Cal. April 10, 2015) ("The Court fails to discern how considering an

application for the renegotiation of loan terms could fall outside the scope of a lender's

'conventional role as a lender of money'"), *with Segura v. Wells Fargo Bank, N.A.*, No. CV-14-

04195-MWF (AJWx), 2014 WL 4798890, at *13 (C.D. Cal. Sept. 26, 2014) ("While sympathetic

to Wells Fargo's arguments, this Court must be directed by California law as established by the

California courts, and it determines the decision in *Alvarez* to be the most relevant, recent, and

well-reasoned decision on the question").

    BofA urges the Court to reject *Alvarez*, saying that the degree of BofA's involvement in

Plaintiffs' alleged injury is far lower than the defendant's in *Alvarez*—BofA, for instance, was not

the party that ultimately initiated the foreclosure of the property. (BofA Motion to Dismiss 7 fn.

2, ECF No. 16; BofA Reply Brief 4:6-5:4, ECF No. 27.) The Court is not convinced, however,

that *Alvarez* requires a showing, at least at this stage in the proceedings, of involvement to the

extent BofA supposes. Rather, *Alvarez* holds that legal duty towards the lender attaches when

"defendants allegedly agreed to consider modification of the plaintiffs' loans." *Alvarez*, 228

Cal.App.4th at 948 ("Whether or not moral blame attaches to this Defendant's specific conduct is

not clear at this stage of the proceedings. However, in light of the other factors weighing in favor

of finding a duty of care, the uncertainty regarding this factor is insufficient to tip the balance

away from the finding of a duty of care").

    Moreover, the vast majority of the factors that the *Alvarez* court recounted in finding the

existence of a legal duty apply in this case. **First**, the transaction (*i.e.*, the loan modification

application) between BofA and Plaintiffs was intended to affect Plaintiffs. **Second**, the potential

harm to Plaintiffs from misstatements or errors in the loan modification process was entirely

foreseeable by BofA. **Third**, contrary to BofA's argument, the injury to Plaintiffs was certain—Plaintiffs expressly informed BofA that they were pursuing a reverse mortgage and would lose the opportunity to pursue that option if BofA did not respond forthwith, to say nothing of the time and effort Plaintiffs expended in trying to contact BofA to follow up on their application.[3] *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal.App.4th 915, 928 (2013) (allegation that plaintiffs "were damaged by the considerable time they spent repeatedly contacting Chase and repeatedly preparing documents at Chase's request" adequate to allege damages). **Fourth**, the same public policy considerations in "preventing future harm to home loan borrowers" apply here as in *Alvarez*. *Alvarez*, 228 Cal.App.4th at 948 ("The California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost"). **Fifth**, the same asymmetry in bargaining power exists here as in *Alvarez*—Plaintiffs' "'ability to protect [their] own interests in the loan modification process [is] practically nil' and the bank holds 'all the cards.'" *Id.* at 949, *quoting Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872, 900 (2013).

The Court determines that *Alvarez* is the most well-reasoned and well-supported decision on this issue. Although *Lueras* makes a compelling argument that no "common law duty" attaches to the offer or negotiation of a loan modification application, it ultimately relies on two cases, *Aspiras v. Wells Fargo Bank, N.A.*, 219 Cal.App.4th 948 (2013) and *Nymark v. Heart Fed. Savs. & Loan*, 231 Cal.App.3d 1089 (1991). While *Nymark* is still good law, it was decided in 1991, long before the California Legislature passed the Homeowner Bill of Rights in 2013, which enunciated a "rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." *Jolley*, 213 Cal.App.4th at 903 ("these measures

---

[3] For the same reason, BofA's argument that there is no "close connection" between their conduct and the damages alleged is incorrect. The fact that BofA was not the party that initiated the foreclosure is not dispositive here because the foreclosure proceedings are not the only injury the Plaintiffs have alleged. (Complaint ¶ 55, ECF No. 1 ("Plaintiffs have suffered, and continue to suffer various damages and injuries, including but not limited to, damage to their credit, excessive late fees and charges, attorneys' fees and costs to save their home, the loss of the reverse mortgage principal balance, the loss of their home if it is sold and the equity contained therein, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression").)

1   indicate that courts should not rely mechanically on the 'general rule' that lenders owe no duty of

2   care to their borrowers").

3       And *Aspiras* is no longer good law. As other courts have noted, *Aspiras* was decertified

4   for publication by the California Supreme Court on January 15, 2014. *Segura*, 2014 WL 4798890

5   at *13, *citing Alvarez*, 228 Cal.App.4th at 946. While depublication "may not be an expression of

6   disapproval by the Supreme Court . . . a depublished opinion is no longer part of the law and thus

7   ceases to exist." *Farmers Ins. Exch. v. Superior Court*, 218 Cal.App.4th 96, 109 (2013) ("When a

8   court decision is made on the basis of an opinion that is subsequently depublished, the law

9   justifying that decision has necessarily changed"). Thus, this Court must conclude that, following

10  the decision to work with Plaintiffs in the loan modification process, BofA owed them a duty of

11  reasonable care in that process.

### b. Fraud and negligent misrepresentation: Misrepresentation of material fact.

13      BofA next argues that there is no actionable misrepresentation of fact alleged in the

14  Complaint because a "representation must ordinarily be about past or existing facts; predictions

15  about future events, or statements about future action by some third party, are deemed opinions,

16  and not actionable fraud." (BofA Motion to Dismiss 8:4-7, ECF No. 16, *quoting Richard P. v.*

17  *Vista Del Mar Child Care Serv.*, 106 Cal.App.3d 860, 864 (1980).) According to BofA, any

18  representation that BofA could or would provide a payoff quote by a certain date constituted a

19  prediction of a future event, rather than a statement about existing facts.

20      It is true that, under California law, the general rule is that "predictions as to future events

21  are ordinarily non-actionable expressions of opinion." *In re Jogert, Inc.*, 850 F.2d 1498, 1507 (9th

22  Cir. 1991), *quoting Richard P.*, 106 Cal.App.3d at 864. California law also carves out exceptions

23  to this rule, however. Where, for example, a "speaker has knowledge of facts not warranting the

24  opinion, or the opinion reasonably tends to induce the other party to consider and rely upon such

25  representation as a fact, there would be a basis for liability in fraud." *Richard P.*, 106 Cal.App.3d

26  at 866. Similarly, a prediction of a future event may "form the basis of a fraud action . . . where a

27  party holds himself out to be specially qualified and the other party is so situated that he may

28  reasonably rely upon the former's superior knowledge." *In re Jogert, Inc.*, 850 F.2d at 1507. Such

1    exceptions have been extended to predictions about timeframes for future actions. *PhotoMedex,*

2    *Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) ("Defendants may be liable for misrepresentation

3    if they said that the Pharos would be available in August 2003 but knew that it would not or could

4    not actually be available until a substantially later date").

5         In any case, a determination as to whether the speaker actually knew that the prediction

6    was false at the time he made the prediction is typically a "question of fact for the jury." *Id.* Here,

7    the Court need only determine whether Plaintiffs have adequately pleaded the cause of action.

8    The Complaint alleges that Johnson, BofA's representative held himself out as "specially

9    qualified" for the statements he made—he claimed that "he was the only individual that could

10   give Plaintiffs a pay-off quote." (Complaint ¶ 15, ECF No. 1.) It also alleges that, at the time

11   Johnson told Plaintiffs "he would provide Plaintiffs with a payoff quote prior to July 1, 2013," he

12   "knew that he would not, or could not, provide Plaintiffs the quote during this timeframe." *Id.* at ¶

13   52. In other words, it alleges that Johnson had knowledge of facts that did not warrant his stated

14   prediction or opinion. The Complaint adequately alleges actionable misrepresentations on the part

15   of BofA.

16              ***c.   Fraud and negligent misrepresentation: Reliance and damages.***

17        BofA argues that Plaintiffs fail to allege that they justifiably relied on BofA's

18   misrepresentations because Plaintiffs could have "ascertained the truth through exercise of

19   reasonable diligence." (BofA Motion to Dismiss 9:21-22, ECF No. 16, *quoting Rowland v.*

20   *Painewebber Inc.*, 4 Cal.App.4th 279, 286 (1992), *disapproved by Rosenthal v. Great Western*

21   *Fin. Secs. Corp.*, 14 Cal.4th 394, 415-16 (1996).) Specifically, BofA argues that Plaintiffs could

22   have determined the amount they were in arrears by looking at the Notice of Default once it was

23   recorded. As Plaintiffs point out, however, they were not seeking to determine the amount they

24   were in arrears when they spoke with BofA in 2013; they were seeking to receive a quote for the

25   total amount required to pay off the entire debt. Likewise, the Notice of Default was not recorded

26   until 2014, long after BofA made the alleged misrepresentations. Thus, reasonable diligence

27   would not have uncovered BofA's alleged deceit and Plaintiffs justifiably relied on the

28   misrepresentations. *Alimena v. Vericrest Fin., Inc.*, 964 F.Supp.2d 1200, 1214 (E.D. Cal. 2013)

1    (reasonable reliance alleged where defendant told plaintiffs it had the "ability and authority to

2    approve loan modifications with borrowers such as Plaintiffs"), *citing OCM Principal*

3    *Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 864 (2007).

4           Likewise, BofA claims that any misrepresentations they made did not cause Plaintiffs

5    damages because Plaintiffs alleged in the Complaint that they were going to miss mortgage

6    payments because of their own personal financial problems. It follows, BofA argues, that the

7    default on the loan and damage to Plaintiffs' credit would have occurred regardless of any

8    misrepresentations by BofA. But the damages alleged by Plaintiffs extend beyond default on the

9    loan and credit damage. With respect to the fraud / negligent misrepresentation claims, Plaintiffs

10   allege that they suffered damages in that they lost opportunities to pursue favorable reverse

11   mortgage offers to pay off the loan. (Complaint ¶ 52, ECF No. 1.) They also allege a litany of

12   other damages, including damage to their credit and default on the loan. Plaintiffs have thus

13   adequately alleged that they suffered damages as a result of BofA's misrepresentations. *Alimena*,

14   964 F.Supp.2d at 1213 ("a misrepresentation which causes a party to forego taking legal action to

15   stop a foreclosure sale, such as retaining an attorney, is sufficient to state a claim for damages for

16   fraud and negligent misrepresentation"), *citing West v. JPMorgan Chase Bank, N.A.*, 214

17   Cal.App.4th 780, 795 (2013).

18          Plaintiffs have plausibly alleged their causes of action for fraud and negligent

19   misrepresentation as against BofA. BofA's Motion to Dismiss as to the fourth and fifth causes of

20   action is thus DENIED.

21          ***2.  BSI Financial Services[4]***

22          The Complaint alleges that Plaintiffs spoke with an employee of BSI's named Chris Davis

23   in December 2014. In that conversation, Davis told them that: (1) "he had the authority to get

24   Plaintiffs' reverse mortgage offer approved with BSI"; and (2) "if they submitted the offer to Mr.

25   Davis, BSI would either approve the offer or submit a counter-offer within three days."

26   (Complaint ¶ 54, ECF No. 1.) Plaintiffs further allege that as a result of the representations,

27   ───────────────

28   [4] BSI does not distinguish between the fourth and fifth causes of action in its Motion to Dismiss. The Court will
     follow suit with respect to BSI's arguments here.

1    Plaintiffs spent time "awaiting the responses from Defendant" and surrendered the opportunity to

2    "receive the funding from elsewhere in order to save the home." *Id.*

3         BSI argues that: (1) Plaintiffs have not adequately alleged that they justifiably relied on

4    any representations by Davis; and (2) BSI was not responsible for any damages because BSI is

5    not the party listed on the Notice of Trustee's Sale. As explained above in Section II(B)(2),

6    however, the specific name of the party on the Notice of Trustee's Sale does not absolve BSI of

7    responsibility at this stage of litigation. The Complaint adequately pleads damages as the result of

8    Defendants' actions. *Alimena v. Vericrest Fin., Inc.*, 964 F.Supp.2d 1200, 1213 (E.D. Cal. 2013)

9    (allegation that plaintiffs "did not take other actions that they would have otherwise taken to save

10   their home from foreclosure but for [defendant's] promises" adequately pleads damages in fraud

11   claim), *citing West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 780, 795 (2013).

12        Plaintiffs have also sufficiently alleged justifiable reliance. To demonstrate justifiable

13   reliance, a plaintiff must allege "(1) that they actually relied on the defendant's

14   misrepresentations, and (2) that they were reasonable in doing so." *Alimena*, 964 F.Supp.2d at

15   1211, *quoting OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157

16   Cal.App.4th 835, 864 (2007). The Complaint adequately alleges the first element—it explains

17   that Plaintiffs gave up other opportunities to save the property based on BSI's representations.

18   (Complaint ¶ 54, ECF No. 1.) The Plaintiffs were also reasonable in doing so:  Davis told them

19   that their application was complete and provided them a specific time frame for BSI's response.

20   (Complaint ¶ 54, ECF No. 1.) The Complaint adequately alleges justifiable reliance. *Alimena*, 964

21   F.Supp.2d at 1214 (allegation that defendant told plaintiff a loan modification application was

22   complete and would be honestly reviewed sufficient to survive motion to dismiss).

23        BSI also levels two other arguments that appear to be based on a misreading of Plaintiffs'

24   Complaint. First, BSI argues that it would simply be illogical for Plaintiffs to rely on Davis's

25   statement because BSI had no affiliation with Carrolton (the company from which Plaintiffs

26   sought a reverse mortgage) and thus had no power to approve or disapprove of the reverse

27   mortgage offer. But BSI's argument misunderstands the Complaint. Plaintiffs allege that they

28   contacted Carrolton, obtained an offer of a reverse mortgage that could be used to pay off the

18

loan, and then approached BSI to see if BSI would modify their loan "with a principal reduction" so that Plaintiffs could use the reverse mortgage to pay off the loan with BSI. (Complaint ¶ 26, ECF No. 1.) In other words, Plaintiffs did not contact BSI to ask them to "approve" the initial reverse mortgage offer with Carrolton—they contacted BSI to ask them to approve the portion of the overall plan that involved BSI (the principal reduction which would allow the reverse mortgage to cover the entire loan).

Similarly, BSI's argument that the Complaint is "extremely vague, ambiguous, conclusory, and fail[s] to meet the specificity requirements for fraud," is unpersuasive. BSI claims that it is not clear from the Complaint whether BSI asked Plaintiffs to "submit the Carrolton reverse mortgage approval confirmation to it in order to evaluate them for a loan modification." (BSI Motion to Dismiss 8:11-13, ECF No. 5.) But the Complaint expressly states that Davis told Plaintiffs that they should submit "the approval letter for the reverse mortgage to him" so that Davis could obtain a "modification with a principal reduction." (Complaint ¶ 26, ECF No. 1.) As to the fourth and fifth causes of action, BSI's Motion to Dismiss is DENIED.

## IV.     ORDER

For the reasons set forth above, the Motions to Dismiss (ECF Nos. 5, 16) are DENIED in part and GRANTED in part. Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiffs' Second Cause of Action (California Civil Code § 2923.7) as against both Defendants is DISMISSED WITH LEAVE TO AMEND;

2.  Within 21 days after the entry of this order, Plaintiffs shall either:

    a.  File a First Amended Complaint curing the deficiencies identified in this Order; or

    b.  Notify the Court in writing that they do not wish to file a First Amended Complaint and instead choose to proceed only on the valid claims in the Complaint.

IT IS SO ORDERED.

Dated:   __July 8, 2015__              _____/s/ Gary S. Austin__
                                        UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28